YAZOO & M. V. R. Co. *v.* CONSUMERS' ICE & POWER Co.

[67 South. 657.]

1. DAMAGES. *Loss of profits. When recoverable. Calculation of profits. Evidence. Attorney's fee. Loss of time.*
   Losses of profits in a business cannot be allowed unless the data of estimation are so definite, and certain that they can be ascertained reasonably by calculation.

2. DAMAGES. *Loss of profits. Calculation. Evidence.*
   In a suit for damages by an ice company against a railroad company for closing a spur track, where the damages were for, first, loss of gains, and profits, second, loss of service of its president, and third, amounts paid for service of attorney and for traveling, hotel, telegraph and other expenses of attorney and president, the court *held*, that the testimony lacked the necessary information from which a calculation could be made of the amount of the loss sustained.

3. DAMAGES. *Attorney, fees.*
   It is the general rule that attorneys' fees should not be recovered as part of damages, unless the wrong or injury complained of is connected with some circumstance of aggravation or malice.

4. SAME.
   It is the rule in Mississippi that attorneys' fees can be awarded in cases in which exemplary damages are given.

5. DAMAGES.  *Loss of time of president of plaintiff company.*
In a suit for damages by an ice company against a railroad company for closing a spur track, an item of damage for loss of time by the president of the ice company will not be allowed where it is not shown that the services he rendered in adjusting with the railroad company the matter in regard to the closing of the spur track were outside the scope of his official duties and were an extra expense to the company.

APPEAL from the circuit court of Coahoma county. HON. SAM C. COOK, Judge.

Suit by the Consumers' Ice & Power Company against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes* and *Chas. N. Burch,* for appellant.

*Cutrer & Johnston,* for appellee.

REED, J., delivered the opinion of the court.

This is an action brought by appellee to recover from appellant damages which it was alleged appellee sustained when appellant spiked down and closed for use a spur track that served appellee in its business of shipping ice. The case was tried before the circuit judge, jury being waived. He rendered judgment in favor of appellee in the sum of $700, and appellant appealed.

The proof is sufficient to sustain the finding of the trial judge as to liability.

The track was closed for six days in the latter part of September, 1907. In its declaration appellees claimed damages from: (1) Loss of gains and profits, seven hundred and fifty dollars; (2) loss of services of its president, one hundred dollars; and (3) amounts paid for services of attorney and for traveling, hotel, telegraph, and other expenses of its attorney and president, three hundred and fifty dollars.

· Now as to the proof of damage. We find in the correspondence between the parties that appellee promptly made claim for payment of loss sustained. A few days after the occurrence, in a letter dated September 30, 1907, appellee sent appellant a statement of account, of which the following is a copy:

For loss on account of cutting out siding and failure to place cars for shipment of ice, Sept. 22 to Sept. 27, inclusive:

| | |
|---|---|
| Six days' loss at factory, at $30 per day ..... | $180 00 |
| Six days' time of W. A. Crawley, at $15 per day................................... | 90 00 |
| R. R. fare, hotel, telegraph and other incidentals ................................. | 50 00 |
| Attorney's fees, including hotel, traveling, telegraph, and other incidental expenses paid J. W. Cutrer ........................ | 150 00 |
| | $470 00 |

Mr. Crawley, president and manager of appellee company, testified that his company was put out of business as far as freight shipments were concerned, and that it would be difficult to arrive at exact figures as to amount of loss. He said the plant sustained a loss of one hundred dollars per day. When asked what expenses were incurred in his effort to have the obstruction removed, he answered:

"Well, I gave it six days of my time; attended to nothing else absolutely; my time I estimate, was worth at least fifteen dollars a day—ninety dollars. I paid out for railroad fare, hotel, telegraph, and other incidentals fifty dollars; then there is an attorney's fee, including hotel, travel, and stenographer and other incidental expenses; paid J. W. Cutrer one hundred and fifty dollars; those three items make two hundred and ninety dollars expenses."

It seems from the evidence that the loss claimed was from the inability to ship bulk ice in cars which were brought to the factory over the spur track. No effort was made to take the ice to the railroad depot and there ship it. Nothing was done towards shipping except to ask that cars be placed on the track at the factory.

Mr. Crawley said that he arrived at the amount of loss of one hundred dollars per day by a mental calculation. He said this is what the company ought to have earned on its shipments. This estimate included his expenses. He did not know that the company's books would show a clear profit of one hundred dollars per day on any six days in September, 1907. Some ice was manufactured during the time. He could not say the amount. The books would show. The company's books covering the term were not introduced; they could not be found. He could not mention any particular order that he had, about that time, to be filled, but says the factory was selling its capacity during September. When asked if business was not lighter because the weather was getting cooler in the last of September, he answered, "No sir; September we regard as one of our best ice months; everybody is having chills and fever, and then it is hot."

Mr. Steve Castleman testified for plaintiff. He said that he could not swear positively what the actual loss to the business from the closing of the spur track was, but that he had had several years' experience with the business, and from his knowledge of it it would be anywhere from one hundred dollars to one hundred and fifty dollars a day.

Mr. Bradley, a witness for appellant, and railroad agent at Belzoni where the ice factory was located, testified that appellee's shipments of bulk ice would not average a small car a day, such car containing about six thousand pounds. There was no other evidence as to this.

Mr. Crawley testified that the prices for ice during September, 1907, varied from five dollars to eight dollars per ton. He could not tell what sales he had on which the factory could not fill during the six days the track was closed.

It is evident that only compensatory damages were awarded in this case. In truth, the proof does not present a case for punitive damages.

The rule regarding the recovery of gains and profits lost through breach of contract was announced in the case of *Railroad Company* v. *Ragsdale*, 46 Miss. 483, and reannounced in the recent case of *Crystal Ice Co.* v. *Holliday*, 64 So. 658, and is:

"Losses of profits in a business cannot be allowed, unless the data of estimation are so definite and certain that they can be ascertained reasonably by calculation."

The amount of the loss in gains and profits cannot be definitely ascertained from the evidence in this case. The proof is insufficient to establish with certainty the amount of such loss by appellee on account of the failure by appellant to operate and use the spur track. In the proof appellee claimed that the loss arising from the closing of the ice plant for six days amounted to one hundred dollars per day. It will be seen that this was only an estimate; that it was not shown from the company's books; the president said it was his mental calculation. He also said that the estimate included his expenses, though he testified that his expenses during the time were included in another item of damages. He could not mention any particular order that his company was unable to fill. In short, the testimony lacks necessary information from which a calculation could be made of the amount of loss sustained.

The only witness who testified on the subject of the amount of the company's shipments said that the com-

pany's shipments would not average one small car of bulk ice a day, such car containing about six thousand pounds, and it is shown in the president's testimony that the company was selling ice at prices from five dollars to eight dollars per ton. It is not shown what the profits would be on the sale of ice shipped. Work in the ice plant was not suspended entirely during the six days, but its work and business continued, and the loss claimed was from the inability to ship ice in bulk in cars placed at the plant over the spur track.

We note, too, that in the declaration the loss of gains and profits was placed at seven hundred and fifty dollars for the six days; that in the account rendered on September 30, 1907, the loss was shown to be thirty dollars per day, or a total of one hundred and eighty dollars, and in the testimony by the president it was estimated at one hundred dollars a day, and still another estimate was given in the testimony of Mr. Castleman, when he placed the loss at from one hundred dollars to one hundred and fifty dollars a day. We do not see how the loss could be ascertained reasonably by calculation from the uncertain and indefinite testimony on the subject and the conflicting estimates given.

In the claim for damages appellee includes an amount paid for services and advice of an attorney in its negotiations with appellant for reopening the spur track. It is the general rule that attorney's fees should not be recovered as part of damages unless the wrong or injury complained of is connected with some circumstance of aggravation or malice. 13 Cyc. 80.

It is the rule in Mississippi that attorney's fees can be awarded in cases in which exemplary damages are given. This is supported by the decision in the case of *New Orleans J. & G. N. R. R. Co.* v. *Albritton,* 38 Miss. 243, 75 Am. Dec. 98:

"In cases, proper for the infliction of exemplary damages, the jury in estimating those damages have a

right to take into consideration the probable expense of the litigation, to which the plaintiff has been subjected, in order to obtain redress for the wrongful act of the defendant; and it is therefore competent for the plaintiff to prove, before the jury in such a case, the reasonable and proper charges of his counsel.''

The case at bar is not one for exemplary damages, and we, therefore, conclude that the amount paid the attorney for advice and services was not a proper item of damages.

From the proof in this case we do not see that the claim for services of the president for six days at fifteen dollars per day should have been allowed. It is not shown that the services he rendered in adjusting with appellant the matter in regard to the closing of the spur track were outside the scope of his official duties and were an extra or additional expense to the company.

It follows, therefore, from our holding that the trial court was in error in fixing damages in this case.

·*Reversed and remanded.*

COOK, J., took no part in this case.