641 So.2d 29 (1994)
PUCKETT MACHINERY COMPANY
v.
Russell EDWARDS.
No. 90-CA-01264.
Supreme Court of Mississippi.
July 21, 1994.
*30 Frank T. Moore, Jr., T. Calvin Wells, Wells Moore Simmons & Neeld, David M. McMullan, Jr., Stubblefield & Clark, Jackson, for appellant.
Rebecca C. Taylor, Jack Parsons, Parsons & Taylor, Wiggins, for appellee.
En Banc.

ON PETITION FOR REHEARING
JAMES L. ROBERTS, Jr., Justice, for the Court:
The original opinions are withdrawn and this opinion substituted therefor.
This is an appeal from a judgment rendered by the Circuit Court of Forrest County, Mississippi, following a jury trial. Puckett Machinery Company sued Russell Edwards in a replevin action for the repossession of equipment Puckett sold to Edwards, which was secured by a purchase money note and security agreement. Edwards counterclaimed in this action, seeking $111,768.00, plus additional damages suffered as a result of alleged defective machinery and misrepresentations by Puckett. The jury awarded Edwards damages in the amount of $108,036.00, *31 after deducting $41,964.00 they found was owed by Edwards to Puckett.
Puckett moved for, and was denied, judgment notwithstanding the verdict, or in the alternative, a new trial. Feeling aggrieved of this finding, Puckett appeals to this Court on the issues of replevin and damages. We reverse and remand on the same.

STATEMENT OF THE FACTS
Mr. Russell Edwards is in the logging business. Prior to August, 1986, Edwards used a ten year-old John Deere, Model 544 B Loader for cutting trees. He decided to buy new tree-cutting equipment, and approached Mr. Gwenzil Dossett, a salesman for Puckett Machinery Company, about purchasing a Caterpillar tree-harvester. Edwards testified that he was fond of his other Caterpillar equipment, and wanted all his equipment to be the same.
Edwards decided to purchase a Caterpillar 910 from Puckett. He put $5,000.00 down, and was given a $12,000.00 trade-in allowance for his John Deere.[1] The sales price for the 910 was $73,320.00, but the total purchase price was $92,138.00, including all features and insurance. The 910 carried a three year or 5,000 hour warranty, whichever occurred first. The 910 was delivered to Edwards at his work site in Roberts, Louisiana. There is undisputed testimony that the 910 did not work properly from the time it was delivered to Edwards. Puckett sent mechanics down to the site to work on the 910. The 910 never operated properly, and was eventually picked up by Puckett. Other than the original down payment and the trade-in allowance, Edwards did not pay anything further on the note on the 910. In fact, a credit memorandum was issued to Edwards on the 910.
After several weeks of attempting to use the 910, a decision was reached by Edwards to purchase another model Caterpillar, the 518 tree-harvester. There is disputed testimony as to what transpired regarding the decision for Edwards to buy the 518. Edwards testified that he felt he had no choice in purchasing another model Caterpillar since Puckett had retained his down payment. However, Mr. Myron Sitton, the executive vice-president and secretary of Puckett Machinery Company, stated that Puckett was not unwilling to give Edwards his down payment back; and in fact, there was no evidence that Edwards ever asked for his money back. It should also be noted that during the pendency of Edwards' decision to purchase the 518, he also looked at similar John Deere equipment.
The original $5,000.00 down payment was applied to the purchase of the 518. The trade-in allowance on the John Deere was raised from $12,000.00 to $29,000.00. Sitton testified that this increase was made because Puckett knew that Edwards was unhappy about the 910 and they wanted to try and make it up to him.
There were a few operational problems with the 518 as well. Edwards testified that the 518 never cut trees as large as he was told that it would. Furthermore, Edwards had trouble with the hydraulic system, and had to have a cylinder rebuilt within the first year of owning the 518. The 518 carried the same warranty as the 910. Edwards testified that the 518 was a fine machine, and he continued to use it right up until the time of trial. Moreover, he planned to continue to use it after the trial.
On or about January 9, 1989, Puckett refinanced the note on Edwards' 518. Edwards had fallen behind in his payments, and this was an attempt to bring his account current. Edwards testified that he had fallen behind on the payments because it had been raining and he was unable to work as a result. He further testified that he had gone into Puckett to "set three notes up." He stated that he did not want to refinance the whole note, but he said he signed the paperwork doing so anyway.[2]
*32 As a result of the refinancing, the monthly payments were lowered from $3900.00 to $3500.00. Id. According to the terms of the refinanced note, there were to be eighteen (18) payments at $3497.00 per month. Sitton testified that the last payment received was the one due on July 10, 1990. It was received on September 26, 1990, but was returned for insufficient funds. It was later made good. Sitton stated that Edwards was twelve (12) payments in arrears, totalling $41,964.00.
There was further disputed testimony as to what transpired at the time the note was refinanced. Edwards testified that he told the people at Puckett that the 518 was not working properly, and that Mr. Delk, the branch manager at the Hattiesburg store, said he would "fix" it. Edwards stated that no one came to his work site to fix the equipment. Sitton testified that he was unaware of any promise made to Edwards to go out to the work site and look at the 518. Furthermore, Delk testified that he recalled Edwards complaining about the 518, but that he did not promise he would go out to the site and look at the 518; and in fact, he did not go.
Edwards stated that he got behind on his payments again after refinancing the note due to rain, but decided at that time he was not going to pay anymore on the 518. He said he was tired of the equipment not working properly. However, he did not notify Puckett of this decision, nor his reasons for discontinuing payment. Puckett, and later its attorneys, sent letters to Edwards, and Edwards acknowledged receipt of these letters regarding his past due payments, but did nothing about them. Edwards continued to use the 518. It was only when the replevin action was brought against him that he took the whole matter to his attorneys.
As stated, Puckett wrote Edwards several letters regarding his past due account. After Edwards failed to bring his account current, Puckett filed a complaint seeking repossession of the Caterpillar 518 tree-harvester on October 18, 1989, pursuant to the January 9, 1989, purchase money note and security agreement signed by Edwards and properly executed by Puckett. Edwards answered and filed a counterclaim on November 14, 1989, claiming breach of warranty and seeking costs of repairs, $111,768.00, plus additional damages.
A jury trial was held July 19-21, 1990. The jury returned a verdict for Edwards. The jury verdict read: "[w]e, the jury, find for Russell Edwards against Puckett Machinery Company and assess his damages at $108,036.00, after deducting the sum of $41,964.00 owed by Russell Edwards to Puckett Machinery on the machine."
Puckett filed a motion for (partial) judgment notwithstanding the verdict, and in the alternative, for a new trial.[3] These motions were denied by the lower court. Puckett perfected its appeal to this Court.

DISCUSSION OF THE ISSUES

I.
Puckett contends that the trial court erred by not granting its Motion for (Partial) Judgment Notwithstanding the Verdict, and in the alternative, its Motion for a New Trial. A motion for judgment notwithstanding the verdict is a procedural device for challenging the sufficiency of the case, and requires that the lower court consider all the evidence before it at the time the motion is made. First United Bank of Poplarville v. Reid, 612 So.2d 1131, 1136 (Miss. 1992) (citing Clements v. Young, 481 So.2d 263, 268 (Miss. 1985)). The sufficiency of the evidence presented by Edwards must be considered on the basis of all the evidence offered and the lower court's ruling tested under its denial of Puckett's judgment notwithstanding the verdict motion. *33 See Reid, 612 So.2d at 1136. That is, the evidence must be viewed in a light most favorable to Edwards, the nonmoving party. See North River Homes, Inc. v. Bosarge, 594 So.2d 1153, 1159 (Miss. 1992).
Our scope of review is well-established:
The motion for J.N.O.V. tests the legal sufficiency of the evidence supporting the verdict. It asks the court to hold, as a matter of law, that the verdict may not stand. Where a motion for J.N.O.V. has been made, the trial court  and this Court on appeal  must consider all the evidence  not just the evidence which supports the non-movants case  in the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.
Splain v. Hines, 609 So.2d 1234, 1238 (Miss. 1992) (citing Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1177 (Miss. 1990); Goodwin v. Derryberry Co., 553 So.2d 40, 42 (Miss. 1989); Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988); Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975)).

II.

REPLEVIN
The initial complaint filed in this cause was a replevin action by Puckett Machinery Company against Russell Edwards for repossession of a Caterpillar 518 tree-harvester, with tree shearer and feller buncher attachments. The equipment was secured by a properly executed purchase money note and security agreement. In a most extraordinary series of events at trial, the jury was never instructed regarding the replevin action.
Puckett called as its first and only witness on the matter of replevin, Mr. Myron Sitton, the executive vice-president and secretary for Puckett. Sitton testified, in pertinent part, that Edwards had purchased a 518 Caterpillar tree-harvester with a tree shearer and feller buncher from Puckett, and that a purchase money note and security agreement secured the purchase of this equipment. Sitton further stated that Edwards had violated the terms of that agreement and had payments past due totalling $41,964.00,[4] while retaining possession of the equipment. Sitton stated that Puckett had asked Edwards to return the machine to Puckett, and that Edwards had failed to do so.
During the jury instruction colloquy between the trial judge and counsel, Puckett asked that instruction P-1 be given. It read:
You are instructed that Puckett Machinery Company, the Plaintiff, is entitled to possession of that certain:
New 518 Caterpillar Harvester, s/n 08ZC00088 (3304 Engine 07Zi6895 Arr 2W3989); New Caterpillar ROPS Canopy, NSN; New Balderson BHS 518 Tree Shear, s/n 140626 (ZZ798); New Balderson BFB518 Feller Buncher, s/n 135356 (ZZ739).
Edwards objected to P-1 as peremptory. Puckett responded that the proof was clear that Puckett was entitled to a peremptory instruction on the issue of possession. The court responded thusly:
Let me tell ya'll  if this were just before me, I would grant the possession of it since this is of a possessory nature. And I'm seeking your thinking on it. The one thing that bothers me, and I don't mean bothersome *34 because I don't care how this case comes out, but jury wise, if I give the PI I think it's very conceivable that this jury is gonna think automatically, we got to now give some on that counter-claim. Jurors don't understand repossessions anyway, or replevins anyway.
How do you think we can best handle it? I can do one of two things, I can either refuse that and handle post verdict. In other words I am going to make sure ya'll get your  I want to hear from you. Because you've even admitted that he didn't make the payments, but I'm just trying to decide how best to handle it.
BY HON. JACK PARSONS [counsel for Edwards]: We think we got it covered in our instructions where it says you reduce if there is any verdict  that it is reduced by that amount of money.
We think that would give the jury the wrong impression.
BY THE COURT: Obviously you're entitled to it, but I'm a little bit  that what bothers me about a replevin before a jury.
BY HON. FRANK MOORE [counsel for Puckett]: That is the hard thing. On the other hand, because of the way we view all of the circumstances in the case, Judge, including the issues of consequential damages, the proof on consequential damages, what our rights may be, if any, on that issue and the Court's ruling on it, we feel that we are entitled to a peremptory on this if there is an instruction somehow along the back, if you find that they are entitled to possession but if you also find for Russell Edwards 
The court did not rule on P-1 at that time.
After completion of consideration of the other proposed jury instructions, P-1 was revisited:
In this record let it be noted that previously proffered for an instruction was P-1 which would have been peremptory in nature and granted the machinery to Puckett Machinery. In light of the manner in which this jury instruction has been couched, I am now going to refuse P-1 but refuse it with the verbal reasoning of the court being, the reason it is being refused solely for the purpose of not confusing the jury. But with everybody in agreement and understanding that the court realizes the legal rights of Puckett to possession of the machinery, but that it is in the manner in which the jury verdict was couched that it has been taken care of that contingency in there.
Seriously, I've said this before but I want it highlighted if it does go to the Supreme Court for them to realize that I am not so terribly dumb that I don't realize the rights of Puckett in this matter. And I think  and I should put in here that I discussed this with the attorneys so that they will know the Court's ruling, what it normally would have been, that it would've normally granted that instruction but for the way we handled this verdict form rather than confuse the jury.
The jury verdict form the court spoke of was submitted to the jury and read:
The form(s) of the verdict will be one of the following forms:
We, the jury, find for Puckett Machinery Company and further find Russell Edwards is not entitled to recover on his counterclaim.
OR
We, the jury, find Puckett Machinery Company is entitled to recover from Russell Edwards the amount of $ ____ after deducting Russell Edwards' damages of $ ____.
OR
We, the jury, find for Russell Edwards against Puckett Machinery Company and assess damages at $ ____ after deducting the sum of $41,964.00 owed by Russell Edwards against Puckett Machinery Company on the machine.
It has long been held that it is reversible error to give instructions likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence. See, e.g., McCary v. Caperton, 601 So.2d 866, 869 (Miss. 1992); Moak v. Black, 230 Miss. 337, 351, 92 So.2d 845 (1957); Film Transport Co. v. Crapps, 214 Miss. 126, 58 So.2d 364 (1952); Jackson v. Leggett, 186 Miss. 123, 131-132, 189 So. 180 (1939).
*35 That is the case here. To have given instruction P-1 would have been unnecessarily confusing to the jury. The trial court ruled correctly that the deduction of the remaining balance on the machine covers the possessory right. In other words, Puckett was entitled to possession only because Edwards had not paid the balance due on the machine. When the jury deducted the remaining balance from the damages assessed to Puckett in favor of Edwards, Puckett no longer had a claim.
The instructions were properly drawn to elicit a decision from the jury as to who owed what, including whatever was due on the machine. Once that was determined, the right to possession would follow. While P-1, the peremptory instruction on possession, was consistent with the first of the forms of verdict instruction which would be used in case of a finding for Puckett on Edwards' claim, it was not consistent with either the second or the third form, one of which would be used when the jury found for Edwards.
As to the first form, had the jury rendered such a verdict, all the court would have had to do was enter a judgment in accordance with that verdict, giving possession to Puckett. There was nothing for a jury to decide, directed or undirected, on this issue. The balance due was uncontested. Once the jury makes a finding with regard to the counterclaim all else follows as a matter of law. If Puckett owes more than it is due, the balance due it is used to reduce its liability and Edwards has fully paid for the machine and keeps possession. This is what happened with the present verdict, which we now reverse. If Puckett had owed less than what was due, it would be entitled to the difference between what it owed and the balance, and if Edwards failed to pay it, Puckett was entitled to possession.
It does not really matter that this began as a replevin matter. Puckett's entitlement to possession turns on whether it is due money from Edwards. That determination involves more than the question of what Edwards has paid. It also involves a determination whether Puckett owes Edwards, entitling Edwards to, in effect, a set off. See, Miss.R.Civ.Pro. 13 and Comment. We have long since determined that under the Mississippi Rules of Civil Procedure, the fact that an action begins as one in replevin does not dictate the relief ultimately granted or the course of the litigation. Hall v. Corbin, 478 So.2d 253 (Miss. 1985).
The jury should only be instructed on those aspects of the law as will enable it to decided the issues commended to it for determination. Here the only thing that the jury had to decide was whether Edwards' counterclaim was meritorious and, if so, the amount of his damages. The trial court properly handled this issue.

III.

CONSEQUENTIAL DAMAGES
Puckett takes no issue with the jury finding that there was a breach of warranty, but rather, appeals on the issue of damages alone. Edwards bought a Caterpillar 910 tree shearer from Puckett on or about August 14, 1986. As stated above, there is no dispute that the 910 was defective from the beginning. Puckett sent mechanics out to Edwards' work site in Louisiana numerous times to try and repair the 910. After approximately three weeks, Edwards parked the 910 and did not use it thereafter. Edwards never paid a single payment on the 910, and the sale was cancelled and he was given full credit for his down payment at that time. On or about September 23, 1986, Edwards executed a purchase order for a Cat 518 to replace the 910. Edwards testified that he was told the 518 would be ready in a week or two. However, the 518 arrived three months later.
Edwards testified that the 518 never cut trees as large in diameter as he had been told it was supposed to cut. He also had to have a hydraulic cylinder rebuilt within the first year. However, there was no evidence presented by Edwards that his output was diminished in any way by his continued use of the 518. Regarding the 518, the only consequential damage Edwards alleged that he suffered is that he had to hire a second sawman because the 518 would not cut the really big trees. When he owned and used *36 his John Deere, he only employed one sawman.
Puckett contends that the trial court erred in submitting the issue of consequential damages to the jury. It bases this contention on the fact that Edwards' evidence as to such damages was legally insufficient, and that Edwards did not specifically plead special damages.
During the course of the trial, Edwards alleged that he suffered lost profits as a result of the breach of warranties regarding the Cat 910. All of the proof offered at trial was oral testimony.
Edwards, Jimmy Douglas, an Edwards' employee, and John Dees, the buyer of the cut timber from the Louisiana work site, all testified that Edwards cut approximately twelve truck loads of timber a day with the John Deere he traded in for partial payment of the 910. They further testified that the output was cutback to six truck loads a day with the 910. Edwards alleged that this cutback in production lasted the three months he was forced to wait for delivery of the 518 to replace the defective 910. The average payoff was $400.00 per load.[5] Apparently, these approximate amounts were based on gross revenues. Moreover, Edwards testified that as a result of the defective condition of the 910, he was forced to hire additional sawmen to supplement the cutting of the trees. Edwards stated that the sawmen's take home pay was $70.00 per day. However, with the insurance and taxes he was required to pay on behalf of the workers, Edwards paid an additional $100.00 per day.
There were no documents on these matters offered into evidence. Although it was established that there were truck tickets given for every load, Edwards stated he threw them away as an ordinary practice after receiving payment on the loads. There were no receipts on salaries paid to the additional sawmen either. Edwards admitted on cross-examination that his wife and his accountant kept his books. He also stated that he did have a bank account for his business, and that the salaries of the additional laborers would have been paid from that account. Also, he admitted that his 1099 tax forms would have reflected what he had been paid for jobs during the regular course of business. Furthermore, Edwards testified that these records still existed. There was no attempt to produce such documents at the time of trial.
Throughout the course of the trial, Puckett objected to any attempt by Edwards to prove consequential damages. At the close of all of the evidence, Puckett requested a jury instruction which would limit Edwards' damages to incidental damages only. The requested instruction, P-4, read in pertinent part:
... you may award Russell Edwards only those damages which Russell Edwards has established to a reasonable certainty, as follows: (1) An amount equal to the amount of the purchase price, if any, which Russell Edwards paid on the equipment involved in the first transaction and which was not credited back to him; (2) Incidental damages, if any, directly and proximately resulting from Puckett Machinery Company's failure, if any, to deliver conforming goods including expenses reasonably incurred in the inspection, receipt, transportation, care and custody of the equipment rightfully rejected, and any commercially reasonable charges, expenses or commissions incident to such failure. [Emphasis added].
The trial court amended the instruction by removing the word "only," and then granted it.
This Court has said that "... while the measure of damages need not be perfect, the most accurate and reliable evidence available should be required." City of New Albany v. Barkley, 510 So.2d 805, 807 (Miss. 1987) (citing Harrison v. Prather, 435 F.2d 1168, 1174 (5th Cir.1970)). See also Purina Mills, Inc. v. Moak, 575 So.2d 993 (Miss. 1990). Furthermore, the plaintiff bears the burden of proof as to the amount of damages. City of New Albany, 510 So.2d at 808 (citing Harper v. Hudson, 418 So.2d 54 (Miss. 1982)).
*37 It seems that Edwards failed to comply with a basic rule in proof of damages, because it is "absolutely incumbent upon the party seeking to prove damages to offer into evidence the best evidence available [for] each and every item of damage. If he has records available, they must be produced. While certainty is not required, a party must produce the best that is available to him." Eastland v. Gregory, 530 So.2d 172, 174 (Miss. 1988) (citing Thomas v. Global Boat Builders & Repairmen, Inc., 482 So.2d 1112 (Miss. 1986); Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963); Conrad v. Dorweiler, 189 N.W.2d 537 (Iowa 1971)).
On cross-examination, Edwards admitted that the records of what was paid to, and on behalf of, the additional sawmen, as well as his personal tax records and banking records, were available. Therefore, the oral testimony admitted as to what Edwards paid the additional workers was not the best evidence when there were records available. See Eastland, supra.
Edwards testified on direct that he had thrown away the truck tickets which would show how much he made per load, thereby rendering them "unavailable" for trial purposes. However, such things as the tax returns for his business and his banking deposits would have been better evidence of the amount of lost profits he experienced as a result of the breach of warranty.
In Yazoo & M.V.R. Co. v. Consumers' Ice & Power Co., 109 Miss. 43, 67 So. 657 (1915), the ice company sued the railroad for closing a spur of track that served its business of shipping ice. The judge awarded the ice company $700.00 in damages. This Court found that there was sufficient evidence of liability on the part of the railroad, but reversed and remanded on the issue of damages. At trial, the president of the company testified that his company suffered damages at $100.00 per day. When asked, he explained that he arrived at this figure by a mental calculation. The company's books could not be found and were not introduced. There was a corroborating witness as to the president's calculations of the company's profits. Id. This Court cited the rule on the recovery of gains and profits lost through breach of contract, which stated: "[l]osses of profits in a business cannot be allowed, unless the data of estimation are so definite and certain that they can be ascertained reasonably by calculation." Id., 67 So. at 658 (citing Crystal Ice Co. v. Holliday, 106 Miss. 714, 64 So. 658 (1914)). The Court found that the testimony lacked necessary information from which a calculation of the amount of loss sustained could be calculated. Id., 64 So. at 685.
Furthermore, this Court has held that in calculating the loss of profits, the loss to be calculated is that of net profits, not gross profits. Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss. 1987) (citing Dunn, Recovery of Damages for Lost Profits 3d, § 6.1 (1987); Cook Industries, Inc. v. Carlson, 334 F. Supp. 809, 816 (N.D.Miss. 1971)). Lovett gave instruction on how to ascertain net profits: a party must deduct such items as overhead, depreciation, taxes and inflation. 511 So.2d at 1353.
Only testimony regarding lost gross profits was presented at trial. There was no mention of deductions for overhead, depreciation, taxes, or inflation.
Additionally, Puckett alleged that M.R.C.P. 9(g) required that in order for Edwards to be entitled to consequential damages, he must first specifically plead them. The rule states simply: "Special Damage. When items of special damage are claimed, they shall be specifically stated." However, the comment to Rule 9(g) more fully explains what is meant:
The kinds of damage which are special and required to be set out in the complaint are infinite; only a few instances will be noted here... . So in actions for breach of contract all consequential losses, such as expenses or the loss of profits expected upon transactions with third persons, must be specially pleaded... .
At trial, Puckett objected when Edwards began to establish his claim to consequential damages. Puckett raised the rule 9(g) objection. After a lengthy colloquy, the trial court overruled the objection, with the judge noting that he presumed under the notice pleadings that Edwards had sufficiently pled his special damages.
Case law is sparse on this matter. In Baugh v. Baugh, 512 So.2d 1283, 1285 (1987), *38 this Court stated that "[r]ule 9(g), Miss. R.Civ.P., requires that in cases where special damages are alleged they must be charged with particularity." Fuselier, Ott & McKee, P.A. v. Moeller, 507 So.2d 63, 68-69 (Miss. 1987), also relied on Rule 9(g). This Court reversed the chancellor's award to Moeller for ten per cent (10%) of the assessed value of his stock because of Moeller's failure to specifically plead the item of damages as required by Rule 9(g). Id.
In pertinent part, paragraph four of Edwards' pleadings read as follows:
... The Counterdefendant shows as a result of these two pieces of machinery wholly failing to do the job they were represented to do he has suffered substantial and great damages. The Counterplaintiff shows he went from a $73,000.00 machine to a $185,000.00, and had the $73,000.00 machine done what it was supposed to do, then he would not have had to pay the additional $111,768.00 for the difference in the value of the machine plus additional interest and insurance on the piece of machinery... .
We find that Edwards failed to comply with M.R.C.P. 9(g) by not sufficiently pleading his consequential damages, and that Edwards did not sufficiently prove his consequential damages for the 910 transaction, nor the 518 transaction.

IV.

DIFFERENCE IN VALUE DAMAGES
Under § 75-2-714, Miss. Code Ann. (1972), the measure of damages for a breach of warranty is the difference between the value of the goods at the time they were accepted and the value of the goods if there had been no breach. See Fedders Corp. v. Boatright, 493 So.2d 301, 309 (Miss. 1986). In the case sub judice, the jury was given a "difference in value" instruction. Puckett alleges that the record is silent as to the value of either the 910 or the 518 as delivered, thereby giving no basis for comparison. Edwards contends that the value of the 910 was zero, and that the value of the 518 was $30,000.00.
The 910 transaction was cancelled when it became obvious that it could not be repaired. Although Puckett kept Edwards' down payment on account, there is no evidence that Edwards could not get it back to apply to the purchase of a different make of equipment. Edwards chose to purchase the 518.
In Fedders, regarding a question of difference in value of damages, this Court stated that if the goods could not be repaired and were worthless, the buyer would have been entitled to a refund of the purchase price. However, if the goods could have been repaired so as to function properly, the damages would have been the costs of repairs. 493 So.2d at 309.
In the 910 transaction, Edwards never paid a single payment on the equipment, and was credited for his down payment. This would show that Puckett complied with § 75-2-714, by refunding the purchase price if the goods are deemed worthless. With respect to the 518 transaction, the value assigned to it at trial was the value ascertained at the time of trial by Edwards' expert witness, not at the time of acceptance four years earlier. Therefore, Edwards did not provide an adequate measure of damages for the 518 transaction.
The trial court erred in instructing the jury on "difference in value" damages.

CONCLUSION
We find that the lower court did not err in failing to instruct the jury that Puckett was entitled to possession in the replevin action. Finding no issue as to liability on the counterclaim, we remand this case to the lower court for a reassessment of damages not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED AND REMANDED ON THE ISSUE OF DAMAGES.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
DAN M. LEE, P.J., and McRAE, J., concur in result only.
NOTES
[1] Puckett sold the John Deere in short order for an undisclosed amount of money. At one point, there was testimony that Edwards told Puckett he wanted his John Deere back, but was told it had already been sold.
[2] Mr. Sitton testified that the entire note was refinanced based mainly on his conversations with Mrs. Edwards, who not only was Edwards' wife, but was also his employee. Edwards stated that she kept the books and wrote the checks. Mr. Sitton testified that he had had more dealings with Mrs. Edwards over the past year, than with Mr. Edwards, and that they had discussed the refinancing of the entire note. Edwards pointed out that Mrs. Edwards had not signed the notes, negotiated the terms of the deal, and was not a party to this suit.
[3] Puckett's judgment notwithstanding the verdict motion was partial because Puckett does not wish to disturb an award of $1,820.33, the cost of repairing the 518, as they deem the award as incidental damages. Furthermore, Edwards provided a copy of the cancelled check for the costs of the repairs.
[4] Sitton had Edwards' ledger card, reflecting Edwards' account with Puckett, with him at trial. The ledger card indicated that Edwards had made six of the scheduled eighteen payments. The last payment made by Edwards was the July 10, 1989, payment, which was received by Puckett on September 26, 1989, and was returned for insufficient funds, but was subsequently made good on October 12, 1989. Therefore, there are a total of twelve payments past due.
[5] Edwards testified that each truck load consisted of four thousand board feet, and that he hauled forty-eight thousand board feet per day. He stated he was paid $100.00 per thousand feet.