**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-60880

KENNETH WORK,

Plaintiff-Appellee,

VERSUS

COMMERCIAL UNDERWRITERS INSURANCE COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Mississippi

(1:98-CV-402-D-A)

January 30, 2003

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.[*]

In this breach of contract action, Kenneth Work ("Work") sues Commercial Underwriters Insurance Company ("Commercial") for, among other things, lost income caused by Commercial's failure to pay an insurance claim. Commercial appeals the district court's denial of

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

its motion for judgment as a matter of law as to Work's claim for lost income damages.  We REVERSE and REMAND.

I.

Work, a timberman, insures his logging equipment with Commercial.  In the Summer of 1998, someone vandalized this equipment.  Initially, it appeared that only one dozer had been vandalized.  Commercial's adjuster promptly inspected the dozer and arranged for its repair.  Work subsequently filed additional vandalism claims when he had problems with other pieces of equipment.  These problems left him unable to reliably use the equipment for the remaining months of 1998 and throughout 1999. Commercial refused to pay some of the additional claims, declaring that some of the problems were not caused by vandalism.  Work then filed suit against Commercial, alleging that it was liable under the terms of his policy for property damage claims related to the vandalism.  He also alleged that Commercial was liable for bad faith breach of contract for failing to pay all his claims.

At the jury trial, Work principally relied on his federal income tax returns to prove his lost income.[1]  He submitted his returns for the years 1996-2000.  For each year, Work had a negative net income.  Work attempted to call his certified public accountant ("CPA") to explain his lost income, but the district

---

[1] Work filed jointly his returns with his wife, Gayle P. Work. The returns reported the profits and losses from Work's business, Kenneth Work Logging.

2

court refused to allow the CPA to offer such testimony because he had not been properly designated as an expert witness, as required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.[2]

Although the income tax returns were the only documentary evidence Work presented, various witnesses testified to his lost income.  Work testified in general terms that he was not able to work because his equipment kept breaking down and that after the vandalism he could no longer make payments on the equipment, some of which was repossessed.  Another witness testified that Work's volume of business declined after the vandalism.  Work's wife testified that the couple had decreased their church tithe after the vandalism, that the business declined dramatically in 1999, and that Work laid off several employees after the vandalism.

Prior to the trial, the district court bifurcated the issues of punitive damages and extracontractual damages (i.e., lost income, emotional distress, and attorney fees) from the issue of contract damages, ordering that the proof related to punitive and extracontractual damages be heard only after the jury decided the issue of whether Work could recover under the contract.  At the close of the first phase, the jury found for Work and awarded him $325,000 under the contract for the cash value of the lost insured

---

[2] The accountant testified as a fact witness only.  Prior to the trial, the court granted Commercial's motion in limine to exclude the accountant's testimony relating to lost income because Work had not identified him as an expert witness.  The court noted in its order that Work had failed to respond to Commercial's motion.

logging equipment. At the close of the second phase of the trial, the jury returned a special verdict finding that Commercial denied payment under the contract for no arguable reason but that it did not commit any malicious wrong or act with gross and reckless disregard for Work's rights. It awarded Work $85,000 in emotional distress damages and $150,000 in lost income damages.

Judgment was entered on August 22, 2001. On September 4, 2001, Commercial moved for JMOL as to the lost income award.[3] The district court denied the motion, and Commercial timely appealed. Commercial has satisfied the portion of the judgment not at issue.

## II.

"We review de novo the district court's ruling on a motion for judgment as a matter of law, applying the same legal standard as the trial court."[4] "Whether the evidence presented at trial is sufficient to create an issue of fact for the jury or will permit the court to enter judgment as a matter of law is governed by

---

[3] The trial transcript shows that Commercial moved for JMOL as to all Work's damages claims at the close of the first phase. It does not appear, however, that Commercial renewed its motion for JMOL at the close of the second phase, although the transcript shows that the parties argued about the sufficiency of evidence supporting Work's lost income claim at the jury charge conference. In any event, because Work did not argue that Commercial's post-verdict motion for JMOL lacked a sufficient predicate, we may review the issue presented. See Thompson and Wallace of Memphis, Inc. v. Falconwood Corp., 100 F.3d 429, 435 (5th Cir. 1996).

[4] Ellis v. Weasler Eng'g, Inc., 258 F.3d 326, 336 (5th Cir. 2001) (quoting Flowers v. Southern Reg'l Physician Servs., Inc., 247 F.3d 229, 235 (5th Cir. 2001)).

4

federal rather than state law."[5]  Hence, JMOL is appropriate only if after reviewing all the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, and making no credibility determinations, and without weighing the evidence, the court determines that "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[6]

### III.

Under Mississippi law,[7] lost income damages are recoverable when they can be proven with reasonable certainty and are not based on speculation or conjecture.[8]  Lost income damages "are

---

[5] Id.

[6] Id. at 337 (citing Fed. R. Civ. P. 50 and Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)).

[7] The parties rely on Mississippi contract law to assign the burden of proof for lost income damages in this case.  See Thompson and Wallace, 100 F.3d at 435 ("As both sides argue this issue under Texas law, we apply Texas law in our analysis and assume that no one disputes its applicability."); Ham Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 459 (5th Cir. 1995) ("We conduct our review of the jury findings according to Mississippi contract law.").

[8] Polk v. Sexton, 613 So. 2d 841, 844 (Miss. 1993) ("The law is settled that a party must prove that he is entitled to an award of damages to a 'reasonable certainty.'"); Lovett v. Garner, 511 So. 2d 1346, 1353 (Miss. 1987) ("In Mississippi, one may recover for loss of future profits in a breach of contract action as long as such profits are proved with reasonable certainty, not based on speculation or conjecture."); see also United States for Use and Benefit of Control Sys., Inc. v. Arundel Corp., 896 F.2d 143, 148 (5th Cir. 1990) ("Profits are generally recoverable in a breach of contract action when they can be proven with reasonable certainty.").

5

speculative only when the cause is uncertain, not when the amount is uncertain."[9]  Because lost profits cannot easily be computed with exactitude, awards of such damages must be based on estimates.[10]  Still, such estimates and projections must themselves be based on "definite and certain" data: "lost profits in a business can be allowed if 'the data of estimation are so definite and certain that they can be ascertained reasonably by calculation.'"[11]  Hence, while "[t]he right to recovery is not precluded by uncertainty regarding the exact amount of damages," a plaintiff must offer evidence that lays "a foundation upon which the trier of fact can form a fair and reasonable assessment of the amount of . . . damages."[12]

Furthermore, lost income damages are measured in terms of net profits, not gross profits.  A plaintiff is entitled to "the gross amount that would have been received pursuant to the business or investment that was interrupted by a defendant's wrongful act, less

---

[9] Parker Tractor & Implement Co. v. Johnson, 819 So. 2d 1234, 1239 (Miss. 2002) (citing Adams v. U.S. Homecrafters, Inc., 744 So. 2d 736, 740 (Miss. 1999)).

[10] See Parker Tractor, 819 So. 2d at 1239 ("[I]t is enough that sufficient facts are given from which the jury may safely make at least a minimum estimate." (internal quotation omitted)); see also Robert L. Dunn, Recovery of Damages for Lost Profits § 5.1 (5th ed. 1998).

[11] Parker Tractor, 819 So. 2d at 1239 (quoting Puckett Mach. Co. v. Edwards, 641 So. 2d 29, 37 (Miss. 1994)).

[12] Ham Marine, 72 F.3d at 462, cited in Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc., 725 So. 2d 902, 914-15 (Miss. 1994).

the cost of running the business or attempting the investment."[13] Hence, variable costs related to lost business opportunities (e.g., labor, utilities, etc.) must be deducted from a gross profit estimate, but fixed overhead costs that would have been incurred under any circumstance (e.g., depreciation, rent, etc.) need not be.[14] Reduced to a simple equation, lost income equals the revenue that would have been generated less those variable costs that would have been incurred in the absence of the complained of breach.[15]

Work argues that the evidence he offered can be used to calculate lost income with reasonable certainty. His argument is as follows. His income tax returns included Schedule C business profit/loss forms for the year before and the year after the vandalism. On each Schedule C form, he included equipment depreciation as a business expense. If he had not taken these deductions, he would have had a net gain in 1997 of $213,257 and a net gain in 1999 of $47,203. Hence, between 1997 and 1999, his net

---

[13] Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc., 725 So. 2d 902, 914 (Miss. 1994) (quoting Cook Indus., Inc. v. Carlson, 334 F. Supp. 809, 817 (N.D. Miss. 1971)).

[14] See Puckett Mach., 641 So. 2d at 37 (reversing damages award in absence of evidence of overhead, depreciation, taxes, or inflation needed to calculate net profits); Lovett, 511 So. 2d at 1353 (reversing damages award due to lack of evidence needed to determine net profits).

[15] See Sure-Trip, Inc. v. Westinghouse Eng'g, 47 F.3d 526, 531 (3d Cir. 1995) ("Where plaintiff is seeking to recover lost profits, such damages are equal to the revenue that would have been derived, less additional costs that would have been incurred, in performing the contract.")

gain declined by $166,054.  Work stated at oral argument that he encouraged the jury to base its lost profits award on this number.[16] The jury apparently accepted the argument and awarded $150,000 in lost income.

We find that Work's evidence fails to provide a foundation upon which a jury could form a fair and reasonable assessment of the amount of his lost profits attributable to Commercial.  A brief exploration of the Mississippi Supreme Court's treatment of the burden of proof in a lost profits case illustrates why this is so. In Parker Tractor, a case on which Work relied heavily at oral argument, the farmer-plaintiff sued the company from which he bought a combine when the equipment operated at only half its promised speed.  He argued that the malfunctioning of the combine roughly cut his profits in half.  In support of his plea for lost profits damages, he offered both his own testimony about the number of acres he was unable to cut because of the speed problem and his accountant's expert testimony about his cost per acre to use the combine.  He also introduced "all existing records which could have shown pertinent losses . . . , including a summary of loss calculations and [his] tax reports."[17]  The precision of the data he offered allowed for the calculation of an estimate of his lost

---

[16] The trial transcript unfortunately does not memorialize Work's closing argument, at which time he apparently laid out his theory of lost income for the jury.

[17] Parker Tractor, 819 So. 2d at 1239.

income at $91,610.75. He asked for $90,000. The jury awarded $150,000, which the court reduced to $90,000.

Work did not produce anything comparable to the specific data that was offered in Parker Tractor. He offered no documentary evidence about the quantity of timber he produced before and after the vandalism.[18] Nor was there oral testimony about the amount of timber that Work had produced on an average day, week, or month before the vandalism. Likewise, Work offered no documentary evidence about his gross income before and after the vandalism, such as bank deposit slips or ledgers. Nor did any oral testimony examine with any degree of specificity the effect of the vandalism on his revenue stream. Thus, apart from general statements, Work offered no basis for estimating either the quantity of timber he was unable to produce after the vandalism or his corresponding loss of revenue.[19] Without quantifiable evidence about the drop off in Work's timber production or about the market prices for timber associated with that drop off, any calculation of the gross profits Work lost due to the vandalized equipment is speculative.

---

[18] The pretrial order, which was prepared and signed by the parties and made part of the court record, shows that Work intended to introduce load tickets from before and after the vandalism as trial exhibits. Work thus implicitly represented to the court that he possessed specific evidence of his decrease in timber production. But because he failed to fully disclose the load tickets during discovery, despite an order to do so, the district court excluded this evidence of Work's actual production.

[19] Curiously, Work himself did not testify during the second phase of the trial. Only his wife, his accountant, and his son did.

Furthermore, Work failed to introduce any evidence of his fixed and variable costs, such as cancelled checks, employee time sheets, gas bills, or other invoices. He offered no such oral testimony along these lines, either. Without evidence of Work's business expenses before and after the vandalism, any calculation of the variable costs he saved during the period he was unable to use his equipment is speculative. Thus, according to the formula stated above, any calculation of his lost income during that time is speculative.

Finally, Work's tax returns simply do not contain enough information from which to calculate his lost income with reasonable certainty. A Schedule C form is designed to calculate the net gain or loss of a business for the purpose of determining taxable income. It is not a profit-loss statement, and its conversion into a profit-loss statement is not as simple as Work suggests.[20] Apart from the deduction for depreciation, it is unclear which of the multiple deductions claimed on Work's Schedule C forms relate to fixed costs and which to variable costs. More to the point, the Schedule C forms offer no basis for estimating how much those variable costs (whatever they were) would have increased had Work's business not been hindered by the vandalism. This information is necessary to estimate Work's lost income, which (stated once again)

---

[20] See Sure-Trip, Inc., 47 F.3d at 531-33 (discussing "the difficulties involved in recasting [a] tax return into a profit and loss statement" for the purpose of estimating lost income).

10

is equal to estimated lost revenue less saved variable costs. Thus, even assuming that the tax returns could be used to determine Work's lost revenue attributable to Commercial's failure to pay his vandalism-related claims, the jury could not use those same returns to estimate with reasonable certainty the related variable costs that Work saved—let alone his lost income.  In short, Work's reliance on his tax returns to show lost income did not just leave room for speculation, it required it.[21]

                                IV.

Because Work failed to produce any evidence from which the jury could estimate, with reasonable certainty, the amount of his lost income attributable to Commercial, we REVERSE the order of the district court denying Commercial's motion for JMOL and REMAND for further proceedings consistent with this opinion.[22]


        REVERSED and REMANDED.

---

[21] While Work's failure to qualify his accountant as an expert exacerbated his problems, even an accountant would need more information than was contained on the tax returns to estimate lost income.

[22] Work's argument based on <u>Hetzel v. Prince William County, Virginia</u>, 523 U.S. 208 (1998), is simply not apropos of the issue presented, which does not concern the recalculation of the lost income damages awarded.