KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 36. I agree that the existence of a contract was a question of fact and that the jury was presented with sufficient evidence to find that the parties were bound by the communications made prior to the execution of the contemplated formal writing. WRH Properties, Inc. v. Estate of Johnson, 759 So.2d 394, 397 (Miss.2000). Thus, the jury’s finding of liability must be affirmed. However, I also would affirm the jury’s award of damages. Dr. Morales’s testimony, together with an assortment of documentary evidence, provided a sufficient evidentiary basis from which the jury reasonably and fairly could determine the extent and limits of his losses. Because I would affirm in toto, I respectfully concur in part and dissent in part.
¶ 37. Our law regarding proof of damages is well settled. In many cases, an exact amount of damages is impossible to calculate due to the nature of the alleged harm. Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss.1984). Thus, the plaintiff must “place into evidence such proof of damages as the nature of [the] case permits, with as much accuracy as is reasonably possible.” J.K., 30 So.3d at 299 (citing Thomas v. Global Boat Builders & Repairmen Inc., 482 So.2d 1112, 1116 (Miss.1986)). In other words, “[t]he plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a *503 reasonable basis for estimating his loss.” Cain, 458 So.2d at 1050 (emphasis added).
¶ 38. In the present case, the general verdict in favor of Dr. Morales did not specify what portion of the total award represented lost earnings. Dr. Morales testified about the recruitment process and provided documentary evidence of HMA’s representations of the favorable market for his services. According to these communications, the area was underserved, and there was a great need for medical services in his field of expertise. Dr. Morales was told that his practice would be quite profitable given the volume of patients he was likely to treat.
¶ 39. On appeal, the defendant focuses on the physician compensation survey, which was received as evidence without objection from the defense. At trial, Dr. Morales testified that he was shown this survey of incomes compiled by the “MGMA Commission,” and that he was led by the defendant to believe that the numbers were “what they make,” not gross revenue. In response to his attorney’s request to “[t]ell us what the MGMA is,” Dr. Morales responded, “They’re a company that surveys, I don’t know if I’m the right person to ask this because this is used more by the hospitals than doctors, but they are a company that sort of surveys incomes and advises hospitals on what to expect. They do work for the hospitals as well as for some doctors.” The document showed a wide range of incomes; and, according to Dr. Morales, HMA’s representations led him to believe that, once his practice was established, his income would be in the higher range.
¶ 40. Shaw confirmed Morales’s description of the MGMA and testified that the document was a “physician compensation survey.” According to Shaw, the survey was “a national guideline that is used to establish fair market value for positions of compensation packages either based on collection or income.” Athough Shaw said that the median numbers represented gross revenue, on cross-examination, she testified that the survey’s numbers are “what they generate in their practice as gross income to cover their overhead or this is what they make as a salary.” (Emphasis added.) Shaw explained that the offer to Morales guaranteed a certain level of revenue but that he would not be paid a salary; instead, Morales’s “salary” (her word) would come out of his gross revenue, as would his operating expenses. Yet, regardless of Shaw’s understanding of the survey or the distinctions between salary and gross revenue as used by the MGMA, her testimony was evidence to be considered by the jury. As the finders of fact, the jurors were charged with resolving any conflicts between her testimony and Morales’s testimony.
¶ 41. This Court has held that “a basic rule in proof of damages” is that the party bearing the burden of proof must offer “the best evidence available.” Puckett Mach. Co. v. Edwards, 641 So.2d 29, 36 (Miss.1994). Unlike other cases in which this Court has reversed damages awards, the evidence before this jury was not some arbitrary guess by Dr. Morales, but was evidence he had been provided by the defendant. In City of New Albany v. Barkley, 510 So.2d 805 (Miss.1987), the Court found that the plaintiffs claim of lost profits and damage to his business property was entirely speculative. As for lost profits, the Court remarked that the plaintiffs “records of profits in prior years was available but he chose not to use them because he felt they would not provide an adequate basis on which to compute his future loss of profits. He apparently chose to ‘guess’ a number and the [trial] court allowed him to do so.” Id. at 807. Regarding certain items lost as a result of the defendant’s *504 alleged negligence, the plaintiff admitted that the value assigned to many of the items was “arbitrarily chosen.” Id. at 808. The Court reversed the case for a new trial on another issue, but “presume[d] that the deficiencies in the proof of damages [would] not recur.”
¶ 42. Similarly, in Puckett Machinery, 641 So.2d 29, 36 (Miss.1994), the Court found that the plaintiffs trial testimony provided insufficient proof of net profits when he admitted that records showing out-of-pocket expenditures, as well as his personal tax and banking records, were available. The opinion remarked that the plaintiff “failed to comply with a basic rule in proof of damages,” for it is “absolutely incumbent upon the party seeking to prove damages to offer into evidence the best evidence available [for] each and' every item of damage. If he has records available, they must be produced.” Id. (quoting Eastland v. Gregory, 530 So.2d 172, 174 (Miss.1988)).
¶ 43. Unlike the plaintiffs in Puckett Machinery and Barkley, Dr. Morales presented the best evidence of his damages available to him, which included, among other things, past tax returns and the income survey provided by HMA. The record supports Dr. Morales’s understanding of the survey numbers and that the defendants had not represented the numbers to him as gross revenue. The defendants do not. dispute that, until Shaw testified at trial, there had been no representations by HMA that the survey reflected gross revenue only. Even then, Shaw’s testimony was equivocal, for she said that the physician compensation survey constituted either gross revenue or salary. Notably, the defendants’ designated expert witness testified in his deposition that the survey numbers represented net income. Even though the defendants did not call this witness at trial, his • deposition testimony was before the trial judge during post-trial motions, and -it supports Dr. Morales’s belief that HMA had presented him numbers representing anticipated net income.
¶44. Just as the plaintiff bears the burden of proving his damages, a defendant bears the burden of proving matters in mitigation or reduction of damages. J.K., 30 So.3d at 299-300 (quoting Poteete v. City of Water Valley, 207 Miss. 173, 42 So.2d 112 (1949)). In this case, the two sides adduced evidence demonstrating lost earnings as well as competing data that could have reduced or mitigated the extent of Dr. Morales’s damages. The amount of damages was for the jury to decide, and its resolution of the evidence was not unreasonable and should not be disturbed on appeal. I would affirm the judgment of the Hinds County Circuit Court; but, because the majority reverses in part, I respectfully concur in part and dissent in part.
CHANDLER, J., JOINS THIS OPINION.